UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| REGINALD REESE,<br>    Plaintiff, | :<br>:<br>: |
| v. | :   Case No. 3:18cv1922(KAD) |
| RIKEL LIGHTNER, ET AL.,<br>    Defendants. | :<br>:<br>: |

**MEMORNADUM OF DECISION Re: MOTION TO DISMISS**

The plaintiff, Reginald Reese ("Reese"), currently incarcerated at the Cheshire Correctional Institution ("Cheshire") brings this civil rights action against Dr. Omprakash Pillai, Physician Assistant Kevin McCrystal and Health Services Administrator Rikel Lightner[1] in both their individual and official capacities. He alleges a violation of his Eighth Amendment rights arising out of the medical treatment he received for injuries he suffered to his left knee while confined at MacDougall-Walker Correctional Institution ("MacDougall-Walker"). He seeks both damages and injunctive relief.

Defendants Pillai, Lightner and McCrystal filed a motion to dismiss all claims brought against them in their official capacities insofar as the request for injunctive relief is now moot, thereby depriving this court of subject matter jurisdiction over those claims. For the reasons set forth below, the motion is granted.

**Facts**

The complaint includes the following facts which are set forth in more detail in the initial

---

[1] Reese lists Rikel Lightner's first name as Racheal and lists Omprakash Pillai's last name as Pillia. *See* Compl. at 1. It is evident from exhibits attached to the complaint that Health Services Administrator Lightner's first name is spelled Rikel and that Dr. Pillai's last name is spelled Pillai. *See id.* at 29, 136. The court directs the Clerk to revise the docket to reflect the correct spelling of Defendant Lightner's first name as Rikel and to revise the docket to reflect the correct the spelling of Defendant Pillia's last name as Pillai.

review order, ECF No. 13. On July 27, 2012, at MacDougall-Walker, Reese injured his left knee playing basketball. *See* Compl. at 8 ¶ 1. Medical Staff members provided Reese with ice and medication for his pain symptoms. *See id.* In the months following the injury to his knee, Reese submitted multiple requests to the medical department to be seen and to be referred for an MRI because his knee was swollen and painful. *See id.* On November 26, 2012, Reese underwent an MRI of his left knee. *See id.* ¶ 2 & at 27, 29. On December 6, 2012, Reese sent a request to Dr. Naqvi seeking to meet with him to discuss the results of the MRI and the type of surgery that might be recommended for his injury. *See id.* On January 3, 2013, Reese underwent a surgical procedure to repair torn cartilage in his left knee. *See id.* at 9 ¶ 2 & at 29.

On June 8, 2015, Reese re-injured his left knee. *See id.* ¶ 3. Medical Staff members provided Reese with crutches and pain medication. *See id.* Dr. Pillai saw Reese a month and a half after he re-injured his left knee. *See id.* During the appointment, Reese indicated that he wanted to be referred for an MRI to determine the nature and/or the extent of the injury to his knee. *See id.* On April 14, 2016, Reese wrote to Physician Assistant McCrystal seeking an explanation for the reason that the request to refer him for an MRI of his knee had been denied. *See id.* ¶ 4.

On January 6, 2017, Reese underwent a second surgical procedure to repair the torn anterior cruciate ligament ("ACL") in his left knee. *See id.* at 11 ¶ 8 & at 38. After the procedure, Reese experienced pain and spasms in his left knee and leg. *See id.* at 10 ¶ 5. During the period from January 23, 2017 to March 14, 2018, Reese submitted multiple requests to Health Services Administrator Lightner, Physician Assistant McCrystal and Dr. Pillai to be treated for symptoms that he experienced after his ACL repair surgery. *See id.* at 10-13 ¶¶ 4-16.

He sought physical therapy, a knee brace and medication that would effectively alleviate his pain symptoms. *See id.*

On March 16, 2018, Reese underwent a third surgical procedure on his left knee. *See id.* at 13 ¶ 18. On March 19, 2018, Reese sent Dr. Pillai a request informing him that neither the medical staff members at the University of Connecticut Health Center ("UCONN"), nor the medical staff members at MacDougall-Walker had provided him with physical therapy. *See id.* ¶ 17. On March 29, 2018, Reese sent a request to Dr. Pillai because he had a big lump on his left knee. *See id.* ¶ 19. Dr. Pillai did not respond to the request and did not examine Reese. *See id.* In April 2018, Reese wrote to Health Services Administrator Lightner, Physician Assistant McCrystal and Dr. Pillai complaining that his knee was painful and that no one had provided him with physical therapy or pain management. *See id.* at 13-14 ¶¶ 20-22. On May 3, 2018, Reese underwent physical therapy for his left knee at UCONN. *See id.* at 14 ¶ 24.

In early June 2018, Reese wrote to Physician Assistant McCrystal seeking a bottom bunk pass because it was too painful to climb to the top bunk. *See id.* at 14-15 ¶ 27. On September 21, 2018, Reese wrote to Dr. Pillai and to Dr. Naqvi and explained that his left knee was still painful, that he would often experience stiffness, "clicking and popping" in his knee and that the medication that had been prescribed to him did not alleviate his pain symptoms. *See id.* at 15-16 ¶ 32.

Reese was transferred from MacDougal-Walker to Cheshire Correctional on June 19, 2019.

**Discussion**

Reese's claims were permitted to proceed against the Defendants in their official capacity

3

because he sought for relief, an "injuncti[on] commanding the defendants to 1) provide [him] with adequate medical care, treatment and medically needed physical therapy." *Id.* at 16-17. Absent this request, Reese's claims against the Defendants in their official capacities would be barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159 (1985) (Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity).

Defendants Pillai, Lightner and McCrystal argue that Reese's transfer from MacDougall-Walker to Cheshire on or about June 19, 2019 has rendered the request for injunctive relief moot, thereby stripping this Court of subject matter jurisdiction over the official capacity claims. Reese opposes the motion on the ground that his need for medical treatment for his knee injury and pain is ongoing.

The party who seeks dismissal of a claim or a case on the ground that the claim or case is moot "bears a heavy burden." *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 84 (2d Cir. 2005). The party may satisfy this burden by establishing that (1) "there is no reasonable expectation ... that the alleged violation will recur," and (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *New York State Nat'l Org. for Women v. Terry*, 159 F.3d 86, 91 (2d Cir. 1998) (quoting *Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).

Typically, an inmate's claims for injunctive and declaratory relief against correctional staff regarding conditions of confinement at a particular facility become moot when the inmate is transferred to a different facility or released from custody because those forms of relief become

4

unnecessary and can no longer be awarded. *See Shepard v. Goord*, 662 F.3d 603, 610 (2d Cir. 2011) ("'In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.'") (quoting *Salahuddin v. Goord,* 467 F.3d 263, 272 (2d Cir. 2006)); *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility."); *Verley v. Wright*, No. 02 Civ. 1182(PKC), 2007 WL 2822199, at *9 (S.D.N.Y. Sept. 27, 2007) ("To the extent that plaintiff seeks injunctive relief directed at officials at [the transferring facility], those claims are now moot as plaintiff is no longer incarcerated [there]."); *Roque v. Armstrong*, 392 F. Supp. 2d 382, 386-87 (D. Conn. 2005) (finding that because plaintiff was discharged from prison "any request for injunctive relief concerning the provision of medical care or proper accommodation for his disabilities by the former Commissioner of Correction or the Department of Correction is now moot").

Notwithstanding, in his opposition to the motion to dismiss, Reese asserts that he continues to experience pain in his left knee even after his transfer to Cheshire in June 2019 and that he still requires physical therapy. Accordingly, he argues that his request for injunctive relief is not moot. If an inmate's injury or need for injunctive relief persists despite his or her transfer to a different facility, the transfer may not moot the request for relief arising out of conduct that occurred at the transferring facility. *See, e.g., Perez v. Arnone,* 600 F. App'x. 20, 22 (2d Cir. 2015) (the plaintiff's "claims with respect to his requests for a single cell [were] not mooted by his subsequent transfer to a new facility" because he "alleged that the problem ... persisted at his new facility"); *Davis v. New York,* 316 F.3d 93, 99 (2d Cir. 2002) (inmate's claim concerning second-hand smoke had not become moot despite his transfer to another housing block where

5

evidence showed that the conditions persisted and that a non-smoking policy had yet to be enforced).

The Court agrees with the Defendants. Here, Reese specifically seeks injunctive relief in the form of medical treatment and physical therapy for his left knee from Defendants Pillai, Lightner and McCrystal, each of whom works at MacDougall-Walker. *See* Compl. at 16-17. Furthermore, there are no allegations which would even suggest that either Dr. Pillai or Health Services Administrator Lightner or Physician Assistant McCrystal has the authority to order a medical staff member at another facility to provide any inmate with any particular form of medical treatment.

In both cases in which the Second Circuit determined that the requests for injunctive relief persisted despite the transfers of the inmates to a different prison facility or a different housing unit within the same facility, the Commissioner of Correction was a named defendant. *See Perez,* 600 F. App'x. at 22-23 (inmate's request for injunctive relief was not moot despite transfer to new facility because inmate "alleged that the problem with double-celling persisted at his new facility, and the [State of Connecticut] DOC Commissioner, a named defendant, ha[d] the power to implement the requested [injunctive] relief") (citation omitted); *Davis,* 316 F.3d at 95, 99 (naming Commissioner of New York department of Correctional Services as a defendant for purposes of injunctive relief sought that related to condition of exposure to second-hand smoke that persisted after inmate's transfer to different housing unit within same facility); *see also Sabir v. Williams*, No. 3:17-CV-749 (VAB), 2019 WL 4038331, at *5–7 (D. Conn. Aug. 27, 2019) (dismissing inmate's requests for declaratory and injunctive relief as moot against current and former Wardens at prison in which alleged constitutional violation occurred but declining to

6

dismiss requests for declaratory and injunctive relief against Director of Bureau of Prisons because the court could not conclude that there was a reasonable expectation "that the alleged freedom of expression violation would not occur at [inmate's] new facility") (citing *Salahuddin,* 467 F.3d at 272). Neither the Commissioner of the Department of Correction nor the Director of Medical Services for the Department of Correction are named defendants.

Reese's requests for an injunction and a declaration are limited to relief that may be provided by a physician, a physician assistant and a health services administrator at MacDougall-Walker. Because Reese is no longer confined at MacDougall-Walker, his claims against Defendants Pillai, Lightner and McCrystal in their official capacities are moot and the motion to dismiss is granted.

**Conclusion**

The Motion to Dismiss [**ECF No. 21**] the claims against Defendants Pillai, Lightner and McCrystal in their official capacities is **GRANTED**. The case proceeds against the defendants in their individual capacities only. The court directs the Clerk to revise the docket to reflect the correct spelling of Defendant Lightner's first name as Rikel and reflect the correct the spelling of Defendant Pillai's last name as Pillai.

SO ORDERED at Bridgeport, Connecticut this 4th day of March, 2020.

_____/s/_____
Kari A. Dooley
United States District Judge